**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------

ELAINE WANG,                                          :
                                                      :
        Plaintiff,                            :  Civil Action No. 1:21-cv-2814
                                                      :
v.                                                    :  **COMPLAINT FOR VIOLATIONS OF**
                                                      :  **SECTIONS 14(a) AND 20(a) OF THE**
PRA HEALTH SCIENCES, INC., COLIN                      :  **SECURITIES EXCHANGE ACT OF**
SHANNON, JEFFREY T. BARBER,                           :  **1934**
ALEXANDER G. DICKINSON, LINDA S.                      :
GRAIS, M.D., JAMES C. MOMTAZEE,                       :  **JURY TRIAL DEMANDED**
GLENN D. STETTIN, M.D., and MATTHEW                   :
P. YOUNG,                                             :
                                                      :
        Defendants.                          :
--------------------------------------------------------  :

      Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

      1.     This is an action brought by Plaintiff against PRA Health Sciences, Inc., ("PRA

Health Sciences or the "Company") and the members PRA Health Sciences' board of directors

(the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants")

for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the

"Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17

C.F.R. § 244.100, in connection with the proposed merger between PRA Health Sciences and

ICON plc and its affiliates ("ICON").

      2.     Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Registration Statement on Form F-4 (the

"Registration Statement") to be filed on March 31, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Indigo Merger Sub, Inc., a wholly owned subsidiary of ICON, will merge with and into PRA Health Sciences with PRA Health Sciences surviving as a wholly owned subsidiary of ICON and ICON US Holdings Inc., a wholly owned subsidiary of ICON (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each PRA Health Sciences stockholder will receive (i) 0.4125 of one ICON ordinary share, and (ii) $80.00 in cash (the "Merger Consideration").

3.      As discussed below, Defendants have asked PRA Health Sciences' stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisors, BofA Securities, Inc. ("BofA") and UBS Securities LLC ("UBS" and together with Barclays, the "Financial Advisors"), in support of their fairness opinions.

4.      It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to PRA Health Sciences' stockholders or, in the

event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the closing of the Proposed Transaction will take place at Cahill Gordon & Reindel LLP, 32 Old Slip, New York, New York 10005; and Georgeson LLC and MacKenzie Partners, Inc., proxy solicitors for ICON and PRA Health Sciences, respectively, are all located in New York, New York. Moreover, both Cahil Gordon & Reindel LLP and Paul, Weiss, Rifkin, Wharton & Garrison LLP, legal advisors of ICON and the Company, are headquartered in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of PRA Health Sciences stocks and has held such stocks since prior to the wrongs complained of herein.

10.     Individual Defendant Colin Shannon has served as a member of the Board since 2010 and is the Chairman of the Board, and the Company's President and Chief Executive Officer.

11.     Individual Defendant Jeffrey T. Barber has served as a member of the Board since November 2014.

12.     Individual Defendant Alexander G. Dickinson has served as a member of the Board since August 2017.

13.     Individual Defendant Linda S. Grais, M.D. has served as a member of the Board since October 2015.

14.     Individual Defendant James C. Momtazee has served as a member of the Board since September 2013.

15.     Individual Defendant Glenn D. Stettin, M.D. has served as a member of the Board since September 2020.

16.     Individual Defendant Matthew P. Young has served as a member of the Board since February 2015.

17.     Defendant PRA Health Sciences a Delaware corporation and maintains its principal offices at 4130 ParkLake Avenue, Suite 400, Raleigh, North Carolina 27612.  The Company's stock trades on the NASDAQ Stock Exchange under the symbol "PRAH."

18.     The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.     __The Proposed Transaction__

20.     PRA Health Sciences, a contract research organization, provides outsourced clinical development and data solution services to the biotechnology and pharmaceutical industries worldwide. It operates in two segments, Clinical Research and Data Solutions. The Clinical

Research segment offers product registration services, including clinical trial management, project management, regulatory affairs, therapeutic expertise, clinical operations, data and programming, safety and risk management, biostatistics and medical writing, quality assurance, and late phase services. It also provides strategic solutions, such as embedded, functional services provider, staff augmentation, and custom-built development solutions, as well as commercialization services; and early development services for Phase I and Phase IIa studies, as well as bioanalytical analysis. The Data Solutions segment offers data, analytics, technology, and consulting solutions to the life sciences market. Its services include market intelligence services, such as targeting and compensation, and pharmaceutical audit suite services; consulting and services comprising brand analytics, managed markets, commercial effectiveness, and scientific studies/clinical hubs; and technology-enabled products and services that allow clients to access and analyze Symphony Health and integrated third-party data. PRA Health Sciences conducts clinical trials in the areas of pharmaceutical development, including oncology, immunology, central nervous system, inflammation, respiratory, cardiometabolic, and infectious diseases. The Company was formerly known as PRA Global Holdings, Inc. and changed its name to PRA Health Sciences, Inc. in July 2014. PRA Health Sciences was founded in 1976 and is headquartered in Raleigh, North Carolina.

21.     On February 24, 2021, the Company and ICON jointly announced the Proposed Transaction:

> **Dublin, Ireland, 24th February 2021- ICON plc, (NASDAQ: ICLR),** a global provider of outsourced drug and device development and commercialisation services to the pharmaceutical, biotechnology and medical device industries, and government and public health organisations, today announced it has entered into a definitive agreement to acquire PRA Health Sciences, Inc. (NASDAQ: PRAH) in a cash and stock transaction valued at approximately $12 billion, with the per share merger consideration consisting of $80 in cash and 0.4125 shares of ICON stock.  The

consideration represents an approximately 30% premium to PRA's closing price as of February 23rd, 2021.

The transaction brings together two high-quality, innovative and growing organisations with similar cultures and a shared focus on high quality and efficient clinical trial execution from Phase 1 to post-approval studies.

Biopharma and medical device customers of all sizes will benefit from broader service offerings and geographic footprint, deeper therapeutic expertise, expansive healthcare technology innovation, and functional talent and capabilities.  PRA's mobile and connected health platforms and real world data and information solutions together with ICON's Accellacare site network, home health services and wearables expertise, will be combined to deliver differentiated decentralised and hybrid trial solutions to meet growing customer needs.

The transaction is anticipated to be highly accretive delivering double-digit accretion in the first full year and growing to 20%+ thereafter, driven by growth momentum, estimated annual run-rate cost synergies of $150 million, and the combined effective tax rate decreasing to 14%, both to be realised in approximately 4 years.

Dr. Steve Cutler, Chief Executive Officer, ICON plc, said:
"The combined company will create a new paradigm for accelerating clinical research and bringing new medicines and devices to market. Both ICON and PRA have track records of robust growth and performance and we are ready to build on this unrivalled position of strength, utilising the outstanding talent in both organisations. With broader and deeper operational scale combined with innovative technology and real world data solutions, we will enable all customers to reduce their development time and cost.  We will be the leading provider of de-centralised and hybrid trial solutions through the integration of our data capabilities, health platforms and Accellacare site network.  The transaction will be highly accretive from full year 1 post-close."

Colin Shannon, Chairman and Chief Executive Officer, PRA Health Sciences, said:
"I joined PRA 13 years ago to help build a company that would make a difference in the world and transform the way we developed new medicines. The way we do it now takes far too long and costs far too much. Critically ill patients can't wait for cures. Underserved populations can't wait for access. Every day counts. COVID-19 created a platform for change that we cannot ignore. The pandemic

accelerated the adoption of mobile health technologies and healthcare intelligence tools – tools that PRA helped develop – at an unprecedented rate. The union of PRA and ICON will create an organization that has the people, data and technology to bring those cures to patients faster and more efficiently than ever before. We are thrilled to be joining with ICON, a company with a similar culture and values. I'm deeply indebted to PRA's 19,000 talented employees who have helped us bring this vision closer to reality. We stand together now because patients can't wait."

**TRANSACTION DETAILS**
Under the terms of the transaction, PRA shareholders will receive per share, $80 in cash and 0.4125 shares of ICON stock. Upon completion of the transaction, PRA shareholders will own approximately 34 percent of the shares of the combined company and ICON shareholders will own approximately 66 percent.

**MANAGEMENT, GOVERNANCE AND HEADQUARTERS**
The combined company will be headquartered in Dublin, Ireland. Dr. Steve Cutler, Chief Executive Officer of ICON plc, will serve as Chief Executive Officer of the combined company and Brendan Brennan, Chief Financial Officer of ICON plc, will serve as Chief Financial Officer. Ciaran Murray will serve as the Chairman of the Board of Directors.

Current PRA Chairman and Chief Executive Officer, Colin Shannon will join the board post the closing of the transaction along with one additional board member from PRA.

**FINANCING, CLOSING AND APPROVALS**
ICON intends to fund the cash portion of the transaction consideration through a combination of cash on hand and fully committed debt financing from Citi. The transaction is not subject to a financing condition.

The transaction has been unanimously approved by both Boards of Directors and is anticipated to close during quarter three of 2021, subject to regulatory and shareholder approvals and customary closing conditions. Until closing, PRA and ICON remain separate and independent companies.

**ADVISORS**
Centerview Partners is acting as lead financial advisor with Citi providing additional financial advisory services, and Cahill Gordon & Reindel serving as legal counsel to ICON plc. BofA and UBS

Investment Bank are acting as financial advisors, and Paul Weiss
serving as legal counsel to PRA Health Sciences.

* * *

22.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore
imperative that PRA Health Sciences' stockholders are provided with the material information that
has been omitted from the Registration Statement, so that they can meaningfully assess whether
or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**     **The Materially Incomplete and Misleading Registration Statement**

23.     On March 31, 2021 PRA Health Sciences and ICON jointly filed the Registration
Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement
was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the
Proposed Transaction.   The Individual Defendants were obligated to carefully review the
Registration Statement before it was filed with the SEC and disseminated to the Company's
stockholders to ensure that it did not contain any material misrepresentations or omissions.
However, the Registration Statement misrepresents and/or omits material information that is
necessary for the Company's stockholders to make an informed decision concerning whether to
vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange
Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

24.     The Registration Statement fails to provide material information concerning
financial projections by prepared management and given to and relied upon by the Financial
Advisors in their analyses. The Registration Statement discloses management-prepared financial
projections for the Company which are materially misleading. The Registration Statement
indicates that in connection with the rendering of the fairness opinions, that the management of

both companies prepared certain non-public financial forecasts (the "Company Projections" and "ICON Projections") and provided them to the Board and the Financial Advisors with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that managements provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25.     For the Company Projections and the ICON Projections as prepared by ICON management, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2021 through 2030: Adjusted EBITDA; Unlevered Free Cash Flow; and Adjusted Earnings Per Share, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). The Registration Statement also fails to disclose any projected income figures for ICON and the Company as calculated by ICON management.

26.     For the Company Projections as prepared by Company management, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2021 through 2025: Adjusted EBITDA; Unlevered Free Cash Flow; and Adjusted net income per diluted share, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

27.     When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

29.     Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Registration Statement not misleading.

_Omissions and/or Material Misrepresentations Concerning Financial Analyses_

30.     With respect to BofA's _Selected Publicly Traded Companies Analysis_ for the Company, the Registration Statement fails to disclose: (i) the companies selected for the analysis;

(ii) the individual multiples and financial metrics for the companies observed by BofA in the analysis; (iii) the Company's net debt as of December 31, 2020; and (iii) the Company's number of fully diluted-shares of common stock outstanding as of February 19, 2021.

31.     With respect to BofA's *Precedent Transactions Analysis* for the Company, the Registration Statement fails to disclose: (i) the individual multiples and financial metrics for the transactions observed by BofA in the analysis, including the transactions selected, the enterprise values implied for each target company; the consideration paid in each selected transaction, and the EB/LTM EBITDA (SBC-Unburdened) multiples of each target companies selected; (ii) the Company's net debt as of December 31, 2020; and (iii) the Company's number of fully diluted-shares of common stock outstanding as of February 19, 2021.

32.     With respect to BofA's *Discounted Cash Flow Analysis* for the Company, the Registration Statement fails to disclose: (i) the terminal values of as calculated by BofA for the cash flows; (ii) line items used to calculate the Company's projected unlevered free cash flows; (iii) the inputs and assumptions underlying the use of range of EBITDA (SBC-Unburdened) exit multiples of 13.0x to 16.5x; (iv) the inputs and assumptions underlying the discount rates ranging from 7.5% to 10.00%; (v) the Company's weighted average cost of capital; (vi) the net debt of the Company as of December 31, 2020; (vii) the number of fully diluted outstanding of PRA Health Sciences common stock as of February 19, 2021.

33.     With respect to BofA's *Selected Publicly Traded Companies Analysis* for ICON, the Registration Statement fails to disclose: (i) the companies selected for the analysis; (ii) the individual multiples and financial metrics for the companies observed by BofA in the analysis; (iii) ICON's net debt as of December 31, 2020; and (iv) ICON's number of fully diluted-shares of common stock outstanding as of February 19, 2021.

34.     With respect to BofA's *Discounted Cash Flow Analysis* for ICON, the Registration Statement fails to disclose: (i) the terminal values of as calculated by BofA for the cash flows; (ii) line items used to calculate ICON's projected unlevered free cash flows; (iii) the inputs and assumptions underlying the use of range of EBITDA (SBC-Unburdened) exit multiples of 13.0x to 17.5x; (iv) the inputs and assumptions underlying the discount rates ranging from 7.25% to 9.5%; (v) ICON's weighted average cost of capital; (vi) the net debt of ICON as of December 31, 2020; (vii) the number of fully diluted outstanding of ICON common stock as of February 19, 2021.

35.     With respect to BofA's *Has/Gets Analysis*, the Registration Statement fails to disclose: (i) the inputs and basis for applying a discount rate range of  7.5% to 10.0% to the estimated Cost Savings and the estimated Tax Savings; (ii) the inputs and basis for applying a perpetuity growth rate of 0% to the estimated after-tax Cost Savings in the terminal year and a perpetuity growth rate of 0.0% to 3.0% to the estimated Tax Savings in the terminal year; (iii) the additional amount of debt expected to be incurred by ICON in connection with the Proposed Transaction; and (iv) the estimated number of fully diluted ICON ordinary shares expected to be outstanding after giving effect to the Proposed Transaction.

36.     With respect to UBS's *Discounted Cash Flow Analysis* for the Company, the Registration Statement fails to disclose: (i) the terminal values of the Company and the basis for using terminal multiples of 15.0x to 16.0x; (ii) line items used to calculate the Company's projected unlevered free cash flows; (iii) the inputs and assumptions underlying the after-tax discount rates ranging from 9.00% to 10.00%; (iv) UBS's estimate of the Company's weighted average cost of capital.

37.     With respect to UBS's *Discounted Cash Flow Analysis* for ICON, the Registration Statement fails to disclose: (i) the terminal values of ICON and the basis for using terminal multiples of 15.0x to 16.0x; (ii) line items used to calculate ICON's projected unlevered free cash flows; (iii) the inputs and assumptions underlying the after-tax discount rates ranging from 9.00% to 10.00%; (iv) UBS's estimate of ICON's weighted average cost of capital.

38.     With respect to UBS's *Discounted Cash Flow Analysis* for the Pro Forma Combined Company, the Registration Statement fails to disclose: (i) one-time costs to achieve the synergies; (ii) line items used to calculate the Pro Forma Combined Company's projected unlevered free cash flows; (iii) the inputs and assumptions underlying the after-tax discount rates ranging from 9.00% to 10.00%; (iv) UBS's estimate of the Pro Forma Combined Company's weighted average cost of capital; (v) the terminal values for the Pro Forma Combined Company as of December 31, 2025 and the basis for using terminal multiples of 15.0x to 16.0x; (vi) the net debt and diluted share information, adjusted; (vii) the inputs and basis for using a discount rate of 10.5% for calculating the present value of the per share reference ranges.

39.     With respect to UBS's *Premium Paid Analysis*, the Registration Statement fails to disclose the premiums paid in the transactions observed in the analysis.

40.     With respect to UBS's engagement as one of the Company's Financial Advisors, the Registration Statement fails to disclose whether UBS was retained for financial or banking services by the Company or ICON in the preceding two years before the execution of the Merger Agreement. Similarly, the Registration Statement fails to disclose whether BofA was retained for financial or banking services by ICON in the preceding two years before the execution of the Merger Agreement.

41.     In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

44.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

45.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

46.    Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

47.    The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

48.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49.     The Individual Defendants acted as controlling persons of PRA Health Sciences within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of PRA Health Sciences, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of PRA Health Sciences, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

50.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of PRA Health Sciences, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Registration Statement.

52.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

53.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

55.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: April 1, 2021                                  **MELWANI & CHAN LLP**

                                                    By:   */s/ Gloria Kui Melwani*
                                                          Gloria Kui Melwani
                                                          1180 Avenue of the Americas, 8th Floor
                                                          New York, NY 10036
                                                          Telephone: (212) 382-4620
                                                          Email: gloria@melwanichan.com